## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| COLT UNCONVENTIONAL RESOLUTE, LLC, | § § § | |
| Plaintiff, | § § | |
| v. | § § | CA No.: 3:13-CV-1324-K |
| RESOLUTE ENERGY CORPORTATION; RESOLUTE NATURAL RESOURCES SOUTHWEST LLC; and RESOLUTE NATURAL RESOURCES COMPANY, LLC, | § § § § § § | |
| Defendants. | § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Before the Court is Defendant Resolute Natural Resources Southwest, LLC's ("RNRS") Motion to Compel Arbitration (Doc. No. 5); Defendants' Motion to Dismiss (Doc. No. 3), filed collectively by all Defendants in this case; Defendants Resolute Energy Corporation (REN) and Resolute Natural Resources Company, LLC's ("RNRC") Motion to Dismiss (Doc. No. 4); and RNRS's Motion to File Sur-Reply in Support of Its Motion to Compel Arbitration (Doc. No. 15). The Court has considered the motions, the briefing by the parties, the material submitted by the parties, and the applicable law. For purposes of this Order, the Court treats REN and RNRC as having joined in RNRS's Motion to Compel Arbitration, unless REN, RNRC or both give notice to the Court that they wish to still be excluded from RNRS's Motion to Compel Arbitration. Because the claims by Colt Unconventional

Resources ("Colt") against RNRS are within the scope of a valid arbitration clause, and any claims by Colt against REN and RNRC seek to hold non-signatories liable pursuant to duties imposed by the E&D Agreement, the Court hereby **GRANTS** RNRS's Motion to Compel Arbitration (Doc. No. 5).  The Court hereby **ORDERS** Colt to submit all claims against all Defendants in this case to the arbitration panel.  The Court hereby **DENIES** Defendants' Motions to Dismiss (Docs. No. 3 & No. 4) as moot, **DENIES** Defendant RNRS's Motion to File Sur-reply (Doc. No. 15) and **DISMISSES** Colt's case with prejudice.  Judgment will enter by separate order.  *See* Fed. R. Civ. P. 56.

I.      **Factual Background**

On April 29, 2011, Colt and RNRS entered into an Exploration and Development Agreement (the "E&D Agreement") for the evaluation, leasing, drilling, exploration, and development of oil and/or natural gas within a defined geographical area within Reeves County, Texas.  The E&D Agreement provides that operations of the oil and gas leases subject to the E&D Agreement are to be conducted pursuant the Model Form Joint Operating Agreement (the "Operating Agreement").  In May 2011, Colt and RNRS signed the Operating Agreement.  The Operating Agreement designated RNRS as the operator of the project area and Colt as the non-operator.

The Operating Agreement provides several clauses particularly relevant to the dispute in this case.  First, the Operating Agreement gave RNRS the right, as operator, to designate any of its affiliates, as defined in the E&D Agreement, to

conduct day-to-day operations.   REN and RNRC are both affiliates of RNRS, as defined in the E&D Agreement.   Second, the Operating Agreement provides that a non-operator shall have the right to participate in the acquisition or construction of any gathering, processing, or plant facilities that may be necessary or convenient for the operation of any well in which a non-operator has an interest.   Third, the E&D Agreement states, in relevant part, that any dispute arising under the E&D Agreement Agreement shall be referred to and resolved by binding arbitration in Dallas, Texas, to be administered by and in accordance with the Commercial Arbitration Rules of the American Arbitration Association ("AAA").   Fourth, the Operating Agreement was incorporated into the E&D Agreement, and in the event of a conflict between the E&D Agreement and the Operating Agreement, the E&D Agreement controls.   Because the Operating Agreement, which specifically includes the arbitration clause, was incorporated into the E&D Agreement, the Court will refer to simply the E&D Agreement generally, as the contract which includes the arbitration agreement.

## Factual Summary

In May 2012, RNRC, acting as an affiliate operator for RNRS, sent Colt a proposal and an authorization for expenditure for Field Facilities in Reeves County, including gas and water gathering pipelines and gas pipeline ("Gathering AFE"). Colt, under its right to participate in the construction of such facilities in the Operating Agreement, signed and returned the Gathering AFE.   By electing to

participate, the Operating Agreement required Colt to bear the cost in proportion to its working interest.  Colt's working interest in the project area is 49%.

Throughout 2012, RNRS, through its affiliate RNRC, continued to send Colt joint interest bills for Colt's 49% of the project's Joint Account, including 49% of the costs of the Gathering System constructed as a result of the Gathering AFE.  Colt was required to pay each joint interest bill within fifteen days of receipt.  As of the filing of the Motion, RNRS, the Operator of the project had submitted joint interest bills totaling $21,893,743 to Colt.  In January 2013, RNRS made demand on Colt for the full payment of Colt's outstanding indebtedness pursuant to the joint interest bills, which have remained unpaid.

On March 1, 2013, RNRS filed a Demand for Arbitration and Statement of Claims with the AAA; filed a lawsuit in the 143rd District Court of Reeves County, Texas related to its Demand for Arbitration; and delivered to Colt copies of the Demand for Arbitration and Reeves County Petition.  On March 4, 2013, Colt filed this lawsuit in the 44th District Court of Dallas County, Texas, which the Defendants then removed to the Dallas Division of the Northern District of Texas.

II.    **RNRS's Motion to Compel Arbitration**

RNRS filed its Motion to Compel Arbitration, seeking a finding that all of Colt's claims against all Defendants are subject to the arbitration clause in the E&D Agreement.  Although REN and RNRC did not expressly join in RNRS's Motion to Compel Arbitration, the briefing makes clear that both REN and RNRC believe that,

4

to the extent that Colt has any claims against REN or RNRC, Colt's claims are subject to arbitration.  All Defendants have been represented by the same counsel in this case, and defense counsel represented REN and RNRC's position regarding arbitration in its briefing related to RNRS's Motion to Compel Arbitration.

The Court is vested with the inherent power to manage its docket so as to achieve the orderly and expeditious disposition of cases.  *Woodson v. Surgitek, Inc.*, 57 F.3d 1406, 1417 (5th Cir. 1995).  The Court is persuaded by the briefing and the relief requested by RNRS that all claims against all Defendants are properly subject to arbitration.  For the orderly and expeditious disposition of the case, the Court treats REN and RNRC as having joined in the Motion to Compel Arbitration.  *See id.*  The Court is required to exercise its inherent power to manage its docket with restraint and discretion.  *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991).  Accordingly, should REN or RNRC not wish to arbitrate Colt's claims against them, REN and RNRC have thirty (30) days from the date of this Order to give notice that they do not wish to arbitrate Colt's claims.

Colt's claims can be categorized into the following three types:  (1) breach of contract claims against the non-signatories, REN and RNRC (2) breach of contract claims against the signatory of the E&D Agreement, RNRS, and; (3) tort claims against all Defendants.  The Court first addresses whether or not Colt may be compelled to arbitrate claims against non-signatories to the E&D Agreement.

Second, the Court addresses whether the claims are within the scope of the arbitration clause.

      A.     Legal Standard for Compelling Arbitration.

Texas law strongly favors arbitration. *Forest Oil Corp. v. McAllen*, 268 S.W.3d 51, 56 (Tex. 2008). The favor shown arbitration agreements in Texas law reflects the strong federal policy favoring enforcement of arbitration agreements outlined in the Federal Arbitration Act. *See, e.g., Moses H. Cone Mem'l Hosp. v. MerColty Constr. Copr.*, 460 U.S. 1, 24 (1983). A party seeking to compel arbitration must establish: (1) the existence of a valid, enforceable arbitration agreement, and; (2) that the claims at issue fall within the scope of that agreement. *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d at 737.

Colt does not contest that the E&D Agreement contains a valid, enforceable arbitration agreement as written. However, the Court has treated REN and RNRC, non-signatories to the E&D Agreement, as joining in RNRS's Motion to Compel Arbitration. Whether a non-signatory can compel arbitration pursuant to an arbitration clause questions the existence of a valid arbitration clause between specific parties, and is therefore a gateway matter for the court to decide. *In re Rubiola*, 334 S.W.3d 220, 224 (Tex. 2011) (citing *In re Weekley Homes, L.P.*, 180 S.W.3d 127, 130 (Tex. 2005). Doubts regarding an agreement's scope are resolved in favor of arbitration because there is a presumption favoring agreements to arbitrate under the FAA. *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d at 737. The policy in favor of

enforcing arbitration agreements is so compelling that a court should not deny arbitration unless it can be said with positive assurance that an arbitration clause is not susceptible of an interpretation which would cover the dispute at issue. *Prudential Sec. Inc. v. Marshall*, 909 S.W.2d 896, 899 (Tex. 1995).

> B.     Colt Is Equitably Estopped from Avoiding Arbitration with REN and RNRC.

A threshold issue is whether REN and RNRC, as non-signatories, can compel Colt to arbitrate its claims. *In re Rubiola*, 334 S.W.3d at 224. In certain situations, both federal substantive law and Texas contract law allows a non-signatory to compel a signatory to arbitrate its claims. *See Washington Mut. Finance Group, L.L.C. v. Bailey,* 364 F.3d 260 (5th Cir. 2004); *In re Vesta Ins. Group, Inc.*, 192 S.W.3d 759, 761–62 (Tex. 2006); *Meyer v. WMCO–GP, LLC*, 211 S.W.3d 302, 305 (Tex. 2006). At times, the Fifth Circuit has applied federal substantive law to determine whether a non-signatory and signatory must arbitrate, and at other times has applied Texas contract law. *See Washington Mut.*, 264 F.3d at 260; *Cf Fleetwood Enters. v. Gaskamp*, 280 F.3d 1069, 1074–77 (5th Cir. 2002). Although the parties selected Texas law to govern the "interpretation, construction, and effect" of the arbitration clause, federal substantive law applies in this case to determine whether Colt is equitably estopped as a signatory from avoiding the arbitration agreement, because an equitable estoppel issue presents no state law question of contract formation or validity. *Washington Mut.*, 264 F.3d at 267 n.6 (5th Cir. 2004).

The Fifth Circuit has held that a non-signatory may rely on equitable estoppel to compel a signatory to arbitrate claims against it.  *Grigson v. Creative Artists Agency L.L.C.*, 211 F.3d 524, 528 (5th Cir. 2000).  Equitable estoppel applies to limit a party from "having it both ways."  *Id.*  A plaintiff cannot, on the one hand, seek to hold the non-signatory liable pursuant to duties imposed by the agreement, which contains an arbitration provision, but, on the other hand, deny arbitration's applicability by claiming that the defendant is a non-signatory.  *Id.*

In *Grigson*, the Fifth Circuit adopted the intertwined-claims basis for applying equitable estoppel.  *See id.*  A non-signatory to a contract with an arbitration clause may compel a signatory to that contract to arbitrate when the plaintiff-signatory's action is intertwined with, and dependent upon, that contract.  *Id.*  The intertwined claims basis allows a non-signatory to compel arbitration in two different circumstances or when both circumstances are present.  *Id.*  First, a non-signatory may compel arbitration when the signatory must rely on the terms of the written contract in asserting its claims against the non-signatory.  *Id.* (quoting *MS Dealer Serv. Corp. v. Franklin*, 177 F.3d 942, 947 (11th Cir. 1999)).  Second a non-signatory may compel arbitration when the signatory raises allegations of substantially interdependent and concerted misconduct by both the non-signatory and one or more signatories to the contract. *Id.*

Colt's claims against REN and RNRC involve interpreting provisions of the E&D Agreement.  Colt claims that the provisions of the E&D Agreement expressly

limit the E&D Agreement's applicability to the construction and operation of pipeline in the Reeves County leasehold, to which the E&D Agreement applies.   Colt alleges REN and RNRC breached the contract by poorly constructing the pipeline, improperly billing the non-operators for the pipeline, and failing to properly pay non-operators.  Colt relies on terms in the E&D Agreement to assert its claims.  REN and RNRC were contract operators pursuant to the E&D Agreement, and Colt charges REN and RNRC, the non-signatory defendants and RNRS, the signatory defendant with interdependent misconduct.  Plaintiff's original state court petition is filled with allegations of Defendants acting together generally, and Plaintiff argues that RNRS, REN, and RNRC are so interdependent that it is often impossible for Plaintiff to determine which entity is acting at any given point.

Colt's breach of contract claim is intertwined with, and dependent upon, the E&D Agreement, which contains the arbitration clause.  To the extent that Colt's claims are within the scope of the arbitration clause, Colt is equitably estopped from avoiding arbitration with REN and RNRC.

C.     Colt's Claims Are within the Scope of the Arbitration Clause.

The Court now turns to whether or not Colt's claims are within the scope of a valid, enforceable arbitration clause.  Colt contends that its breach of contract claims and tort claims are not within the scope of the arbitration clause.  As to the breach of contract claims, Colt argues that the E&D Agreement does not pertain to development of pipeline because the E&D Agreement specifically excludes pipeline

from what RNRS, as operator, is authorized to build.  Colt argues that the pipeline at issue in this case is governed by an authorization for expenditure, which Colt claims is a contract on its own, separate from the E&D Agreement.  As to its tort claims, Colt argues, without citing any legal authority, that the torts necessarily fall outside the scope of the arbitration clause.  Neither argument allows Colt to avoid arbitrating its claims.

> 1.    Colt's Breach of Contract Claims "Arise Under" the E&D Agreement.

Colt argues that its breach of contract claim does not "arise under" the E&D Agreement.  Colt admits, as it must, that its breach of contract claim "arises under" some contract between the parties.  Colt argues that the E&D Agreement does not allow RNRS or its affiliates to build pipeline facilities.  Instead, Colt argues that the authorization for expenditure sent by RNRC to Colt is the contract which supplies its breach of contract claim.

When the parties' dispute centers on the interpretation of a contract provision, the dispute falls within the scope of an arbitration clause, even when the contract uses the narrower "arises under" language, rather than the broader "arising out of" language.  *Explo, Inc. v. Southern Natural Gas Co.*, 788 F.2d 1096, 1098–99 (5th Cir. 1986).  Colt interprets Article VI.D. of the Operating Agreement to mean that the E&D Agreement did not allow for RNRS or its affiliates to build the pipeline, which is the subject matter of Colt's breach of contract claim.

Defendants counter that Article VI.D. is a boilerplate provision.  Defendants point to Article XVI.I. of the Operating Agreement which grants non-operators the right to participate in the acquisition or constructions of any gathering, processing, or plant facilities.  Defendants argue that Article XVI.I. is a custom-made and negotiated contract provision which allows RNRS and its contract operators to build the pipeline that is the basis of Colt's contract claim.

The Court need not resolve the merits of the parties' claims to find that the breach of contract dispute centers on the interpretation of contract provisions in the E&D Agreement and Operating Agreement.  *See id.* (reversing a lower court's finding that the dispute did not arise under a contract without determining the merits of the dispute).  Articles VI.D. and XVI.I. both address whether or not RNRS or its contract operators may construct pipeline.  Interpreting the E&D Agreement to limit its application to pipeline is an initial, necessary step in Colt's theory that authorizations for expenditure are independent contracts.  Defendants counter that the authorizations for expenditure were presented to Colt pursuant to the E&D Agreement; that the joint interest bills were calculated and sent pursuant to the E&D Agreement; and that the standard of conduct for determining a breach was set by the E&D Agreement. Because the dispute centers on the interpretation of contract provisions in the parties' agreement containing the arbitration clause, Colt's breach of contract claims against Defendants are within the scope of the arbitration clause.

2.    Defendants May Compel Colt to Arbitrate Its Tort Claims.

Colt argues, without citing legal support, that merely because it is alleging intentional torts, its tort claims are outside the scope of the arbitration agreement. Under Texas law, whether a claim falls within the scope of an arbitration agreement depends on the factual allegations of the complaint instead of the legal causes of action asserted. *Prudential SeColtities, Inc. v. Marshall*, 909 S.W.2d 896, 900 (Tex. 1995). A tort claim is arbitrable if it is so interwoven with the contract that it cannot be maintained without reference to the contract. *Valero Energy Corp. v. Wagner & Brown, II*, 777 S.W.2d 564 (Tex. App—El Paso 1989, writ denied). When a party's claim of non-liability for a tort arises from connections with the contract, those torts are subject to arbitration. *See In re Vesta Ins. Group, Inc.* 192 S.W.3d 759, 761–62 (Tex. 2006) (discussing arbitration of a tortious interference with contract claim).

Colt's claim for tortious interference requires examining whether Defendants committed an independently tortious or wrongful act and whether Defendants lacked privilege or justification to do the act. *See Astoria Indus., Inc. v. SNF, Inc.*, 223 S.W.3d 616, 632–33 (Tex. App.—Fort Worth 2007, pet. denied). Colt's slander of title tort claim requires examining whether Defendants uttered and published a disparaging false statement about the title to the property with legal malice. *Hauglum v. Durst*, 769 S.W.2d 646, 653 (Tex. App.—Corpus Christi 1989, no writ). Colt's business disparagement tort claim requires examining whether Defendants published disparaging, false words with malice. *Prudential Ins. Co. of Am. v. Financial Review*

*Servs., Inc.*, 29 S.W.3d 74, 81 (Tex. 2000).  The resolution of Defendants' claims of non-liability for all these elements arises from interpreting clauses in the E&D Agreement.  Colt cannot maintain these torts without reference to the contract, making Colt's tort claims against Defendants subject to arbitration.

I.      Conclusion

RNRS, the signatory defendant, may compel Colt to arbitrate its breach of contract claims against it because its breach of contract claims "arise under" the E&D Agreement. REN and RNRC, the non-signatory defendants, may compel Colt to arbitrate its breach of contract claims against them because Colt is equitably estopped from avoiding the E&D Agreement's arbitration clause.  Defendants may also compel Colt to arbitrate its tort claims because Colt cannot maintain its tort claims without reference to the E&D Agreement.  Because all issues raised by Colt's petition are arbitrable, the Court **DISMISSES** Colt's case with prejudice, rather than staying the action.  *See Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164–65 (5th Cir. 1992).

SO ORDERED.

Signed on July 19th, 2013.


*Ed Kinkeade*
_____
ED KINKEADE
UNITED STATES DISTRICT JUDGE